Lillie Mae **GRAY**, Bessie Gray, Louis C. Warren, Elijah Warren, Ray Warren, Jr., Flora Jean Warren, Daniel L. Warren, Thomas Warren, Marvis McCann, Pearlina Washington, Eula B. Moore, and Mae Retha Robinson, Plaintiffs,

v.

**MURPHY OIL USA, INC.**, Denbury Management, Inc., Arkansas Oil Company, S. Lavon Evans, Jr. Operating Co., Inc. American Exploration Co., Cenergy Exploration Co., Conquest Exploration Co., and Oryx Energy Co., Defendants.

Civ. A. No. 4:94–CV–72(L)(N).

United States District Court,
S.D. Mississippi,
Eastern Division.

Sept. 12, 1994.

L. Arthur Hewitt, Jerry A. Evans, Hattiresburg, MS, Stuart H. Smith, Law Offices Bernard, Sacks, P.C., New Orleans, LA, James R. Cox, Law Office of Bernard Sacks, P.C., New Orleans, LA, for plaintiffs.

Eugene M. Harlow, Norman G. Hortman, Jr., Gibbes, Graves, Mullins, Bullock & Ferris, Laurel, MS, Richard M. Edmonson, Martin R. Jelliffe, Edmonson, Biggs, Mozingo & Jelliffe, Jackson, MS, Thomas L. Kirkland, Jr., S. Craig Panter, William Thomas Wilkins, IV, Kirkland, Barfield & Moore, Jackson, MS, Larkin C. Eakin, Jr., Larkin C. Eakin, Jr., Houston, TX, for defendants.

## *MEMORANDUM OPINION AND ORDER*

TOM S. LEE, District Judge.

Plaintiffs Lillie Mae Gray, and others, owners of certain property located in Wayne County, Mississippi, filed this action on May 24, 1994 in the Circuit Court of Wayne County alleging various causes of action against the defendants based on their claim that defendants, through oil and gas production operations on plaintiffs' land, have contaminated that land with "naturally occurring radioactive material (NORM)."[1] Their complaint was couched in terms of state law violations, including negligence, strict liability, trespass and breach of contract.[2] While

---

**1.** The defendants are Murphy Oil, USA, Inc., Denbury Management, Inc., Arkansas Oil Company, S. Lavon Evans, Jr. Operating Co., Inc., American Exploration Co., Cenergy Exploration Co., Conquest Exploration Co. and Oryx Energy Co.

**2.** Their specific causes of action are discussed in greater detail *infra*.

the case was pending in state court, defendants American Exploration Company, Cenergy Exploration Company and Conquest Exploration Company proposed to conduct cleanup operations on the subject properties to remove any NORM contamination and so notified plaintiffs. Plaintiffs, however, sought to prevent defendants from proceeding with the proposed cleanup, and toward that end, moved the state court for issuance of a preliminary injunction. In their motion and supporting memorandum, plaintiffs argued, as one would expect, that they would suffer irreparable harm were defendants not enjoined.[3] They maintained, *inter alia,* that defendants should be precluded from proceeding with the cleanup without first securing plaintiffs' approval of any proposed method of disposing of the contaminated soil since plaintiffs could potentially be held liable to third parties for response costs under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.* if defendants improperly disposed of the contaminated soil from plaintiffs' properties. Specifically, plaintiffs asserted the following:

> According to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.,* "the owner and operator of a ... facility ... from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for ... any ... necessary costs of response incurred by any ... person consistent with the national contingency plan." 42 U.S.C. § 9607(a) (1972). CERCLA is a strict-liability statute which places liability for response costs upon the owner of a facility from which hazardous substances are released, regardless of fault.

> Plaintiffs are owners of a site that is arguably a "facility" within the meaning of CERCLA. The substances that comprise NORM include, among other materials, the radionuclides Radium–226 and Radium–228, and the radioactive gas Radon–222. All three are listed hazardous substances pursuant to Section 9601(14) of CERCLA.

*Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 668–69 (5th Cir.1990); 40 C.F.R. § 302.4 & app. B (1993). According to CERCLA, "[t]he term 'release' means any spilling, leaking, ... emitting, emptying, discharging, ... escaping, leaching, dumping, or disposing into the environment." § 9601(22). Thus if the wastes that have been found to exist on Plaintiffs' property are in any manner improperly handled or disposed such that they are found to be "released" within the meaning of CERCLA, Plaintiffs could be found liable for any response costs incurred as a result of such release.

American has not agreed to defend, indemnify or hold Plaintiffs harmless for any claim that may arise under CERCLA or any other law as a result of the proposed disposition of the radioactive wastes that have been found to exist on Plaintiffs' property. Nor has American demonstrated that it has sufficient resources to enter into such an agreement. Further, American can provide no assurance that it will remain solvent during the entire period of potential liability under CERCLA or other law—which because of the long half-lives of NORM radio-nuclides is essentially infinite in duration. Clearly, Plaintiffs have an enormous interest in insuring that the remediation that American has offered to perform is done safely, properly and fully in accordance with not only present law, but the law of the foreseeable future.

Just prior to a scheduled state court hearing on plaintiffs' motion for injunctive relief, defendants removed the case to this court, claiming federal question jurisdiction pursuant to both the general federal jurisdiction statute, 28 U.S.C. § 1331, and 42 U.S.C. § 9613, which provides for exclusive federal jurisdiction over "all controversies arising under" CERCLA. After removal, plaintiffs promptly moved to remand this action to state court, and that motion, together with defendants' response, is presently before the court for consideration.

---

**3.** *See Adams County Election Comm'n v. Sanders,* 586 So.2d 829, 831 (Miss.1991) (party seeking injunctive relief must show he will suffer irreparable harm if injunction not issued).

The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule," under which the district courts may exercise jurisdiction if a federal question is presented by the plaintiffs' statement of their own claims on the face of their properly pleaded complaint. If it appears that plaintiffs' claim is created by federal law, or if it appears that the resolution of a substantial question of federal law is essential to plaintiffs' right to relief, the district court will have jurisdiction to hear the case; otherwise, it will not. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983). In the case at bar, defendants contend that plaintiffs have asserted a claim under CERCLA in two respects. According to defendants, plaintiffs have not only alleged claims actually created by CERCLA, but they have also asserted causes of action which, even if not federally-created, nevertheless require the resolution of a substantial question of federal law. Each of these arguments will be considered in turn after a brief review of plaintiffs' complaint and CERCLA.

### Plaintiff's Complaint

In their complaint, plaintiffs allege six theories of liability, denominated in separate counts, as follows. Count 1 alleges that defendants were negligent in allowing the accumulation and/or release of NORM materials on plaintiffs' property, in failing to properly and adequately inspect to determine whether NORM materials had been deposited onto plaintiffs' property and in failing to warn plaintiffs of the existence of NORM on their property. Plaintiffs charge additionally that "Defendants negligently, recklessly and/or intentionally failed to properly remove and dispose of [NORM] substances that have contaminated Plaintiffs' property," and that they have

> violated, and continue to violate, provisions of the Regulations for the Control of Radiation in Mississippi, and of the Mississippi Oil and Gas Regulations, and other statutes and regulations that are designed to protect the class of persons to which Plain-

tiffs belong from the kind of damage to real and personal property suffered by Plaintiffs, thus constituting negligence per se.

In addition to their negligence allegations, plaintiffs charge in Count 2 that defendants' conduct and operations have created a public nuisance and amount to a "nuisance per se" under Miss.Code Ann. § 17–17–17.[4] And in Count 3, plaintiffs aver that by their knowing and intentional emission of NORM substances, defendants have committed an assault and battery, subjecting plaintiffs to harmful and offensive contact with NORM and to the fear of such contact. Count 4 charges a trespass to land, and in particular, that "Defendants' storage, release and disposal of [NORM] substances on Plaintiffs' property" in such a way as to contaminate the soil and groundwater, and their entry upon plaintiffs' land to install and maintain equipment and facilities that emit [NORM] substances, all of which have occurred without plaintiffs' consent, amount to a trespass. Plaintiffs allege in Count 5 that defendants' contamination of their property amounts to waste and violates the terms of their lease agreements governing defendants' conduct on plaintiffs' land and finally, they assert that defendants are strictly liable for damages sustained by plaintiffs by virtue of having engaged in abnormally dangerous and ultra-hazardous activities on plaintiffs' property. For all of these alleged acts and omissions, plaintiffs demand monetary damages, including (1) "costs of site investigation, monitoring, cleanup and/or remediation, loss of property values and stigmatic losses; (2) [d]amages for disruption of bodily tissues and cells resulting from exposure to ionizing radiation; (3) [d]amages resulting from the anxiety, distress, fear, aggravation and inconvenience that have been caused within Plaintiffs by Defendants' contamination of Plaintiffs' real and personal properties by radioactive scales, residues and other harmful and hazardous substances." They also seek declaratory relief "in the form of an order establishing Defendants' liability for all costs of site investigation, monitoring, abatement and cleanup of … Plaintiffs' property." Lastly, they re-

---

4. That statute proscribes "[t]he formation of un-   authorized dumps…."

quest injunctive relief "in the form of an order requiring Defendants to perform a complete site investigation, monitoring, abatement and cleanup of Defendants' releases of [NORM] substances ... upon prior notice to Plaintiffs and in accordance with methods and procedures that meet with Plaintiffs' prior approval."

## CERCLA

Manifestly, a claim for damages under CERCLA falls within the exclusive jurisdiction of the federal courts under both 42 U.S.C. § 9613 and 28 U.S.C. § 1331, the federal question statute.[5] CERCLA was enacted in 1980 to "provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." Pub.L. No. 96–510, 94 Stat. 2767 (1980). CERCLA is a strict liability statute which places liability for response costs upon the owner of a facility from which hazardous substances are released, regardless of fault. To achieve these goals, CERCLA provides two categories of enforcement mechanisms, one public, by permitting the federal government to respond to hazardous waste disposal, *see* 42 U.S.C. §§ 9604–05, 9611–12, and the other private, *see* 42 U.S.C. § 9607. What is potentially at issue here is the latter, a private right of action under CERCLA. CERCLA authorizes private parties to bring civil actions to recover necessary costs associated with the cleanup of hazardous waste from those responsible for creating such wastes. *See* 42 U.S.C. § 9607 (owner or operator of facility liable for necessary costs of response incurred in removal or remediation consistent with the national contingency plan). Recoverable "response costs" include the costs of

> such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate

damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

42 U.S.C. § 9601. A private plaintiff suing for response costs under CERCLA must prove four elements in order to prevail:

> (1) that the site in question is a "facility" as that term is defined in Section 9601(9);
>
> (2) that the defendant is a responsible person within the meaning of Section 9607(a);
>
> (3) that a release or a threatened release of a hazardous substance has occurred; and
>
> (4) that the release or threatened release has caused the plaintiff to incur response costs.

*Amoco Oil Co. v. Borden,* 889 F.2d 664, 668 (5th Cir.1990).

## CERCLA Response Costs

Defendants here submit that a review of plaintiffs' complaint, together with the allegations made by plaintiffs in their motion for preliminary injunction and supporting brief, plainly discloses that plaintiffs are effectively pursuing a cause of action for response costs under CERCLA. In support of their position, defendants point out that plaintiffs specifically argued in their brief for injunctive relief that the property at issue in this suit "is arguably a 'facility' within the meaning of CERCLA," and alleged further that "the substances comprising NORM ... are listed hazardous substances pursuant to Section 9601(14) of CERCLA." Moreover, the complaint alleged that defendants were responsible for the accumulation and/or "release" of these substances on plaintiffs' property. Finally, the type of damages which plaintiff sought in their complaint included "costs of site investigation, monitoring, cleanup and/or remediation," all of which are included within the "response costs" recoverable under CERCLA. Defendants thus reason that since plaintiffs have, in one form or another, alleged each of the elements of a CERCLA claim, then it must be concluded that they

---

**5.** Defendants note that the meaning of the "arising under" language of 28 U.S.C. § 1331, and that of 42 U.S.C. § 9613 is the same, and that if a claim "arises under" CERCLA, jurisdiction is proper under both statutes. On the other hand, defendants note that "a claim could require the interpretation and application of CERCLA so as to invoke federal question jurisdiction, though that claim may not be a direct action under CERCLA for recovery of response costs."

are proceeding under CERCLA, even though they have not identified CERCLA as a basis for recovery in their complaint. They maintain that plaintiffs, despite labeling theirs exclusively as state law claims, are in reality pursuing a claim created by CERCLA in every respect but name only.

■ It is well settled that a plaintiff may elect to forego a federal claim and proceed in state court on a state-created claim. Indeed, the Supreme Court has recognized as a corollary stated that

> the party who brings the suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a "suit arising under" the [laws] of the United States by his declaration or bill.

*The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913); *see also Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) ("[plaintiff] may avoid federal jurisdiction by exclusive reliance on state law"); *Aaron v. National Union Fire Ins. Co. of Pittsburgh,* 876 F.2d 1157, 1161 n. 7 (5th Cir.1989) ("[I]f [plaintiff] chooses state court and fails to plead a federal cause of action, he cannot be forced to amend his complaint to do so."). However, under the "artful pleading doctrine," a plaintiff may not avoid federal jurisdiction merely by omitting to plead necessary federal questions in his complaint. *See Franchise Tax Bd.,* 463 U.S. at 22, 103 S.Ct. at 2852–53; *Powers v. South Central United Food & Commercial Workers Unions & Employers Health & Welfare Trust,* 719 F.2d 760, 765 (5th Cir.1983) ("plaintiff may not defeat removal by ... 'artfully' failing to plead essential federal issues in the complaint."). Thus, "if the court concludes that the plaintiff[s'] failure to plead [their] federal claim was not in good faith, but rather was an attempt to conceal the fact that [their] claim was truly federal, the court will allow the removal." *Aaron,* 876 F.2d at 1161. In this case, plaintiffs argue that even if they *could have* alleged a claim for response costs under CERCLA, they did not do so, either in form or in substance. Rather, they deliberately elected to proceed solely on the basis of state law causes of action which, they say, in contrast to CERCLA,

provide the full range of remedies they seek, including injunctive and declaratory relief, as well as every element of compensatory damages to which they have alleged entitlement. They argue, in short, that they did not "artfully" omit to plead a CERCLA claim, or any other federal claim, and that nothing in their complaint, or in their filings relating to their motion for preliminary injunction, can rationally be read to suggest otherwise. The court must agree.

■ While plaintiffs did contend in their motion for a preliminary injunction that their property is a CERCLA facility and that NORM deposits on their property are comprised of hazardous substances under CERCLA, and though they charged in their complaint that defendants are responsible for the release of these substances on their property, the context of these various allegations belies the conclusion that plaintiffs have alleged a cause of action under CERCLA for the recovery of response costs. Plaintiffs' allegation that defendants caused the accumulation and/or release of NORM materials on their property was made solely in connection with their state law claims of negligence, trespass, assault and battery, nuisance and breach of contract. The subsequent reference in their preliminary injunction motion to their property as a CERCLA facility and to the NORM deposits as hazardous substances under CERCLA could perhaps be tied in to the allegations of the complaint to show the existence of a federal claim *if* those assertions in the preliminary injunction motion were made in the context of plaintiffs' attempting to demonstrate *defendants'* potential liability to *plaintiffs.* That is not what has occurred, however. Rather, plaintiffs contended in their motion not that defendants were liable to them, but that *they,* the plaintiffs, faced potential liability to third parties *if* defendants failed to safely dispose of the NORM materials on their property. Given the context of these various allegations, then, the court cannot conclude that plaintiffs have alleged a cause of action for CERCLA response costs.

### Negligence Per Se

■ In their complaint, plaintiffs alleged the following:

Defendants have violated and continue to violate, provisions of the Regulations for the Control of Radiation in Mississippi, and of the Mississippi Oil and Gas Regulations, *and other statutes and regulations* that are designed to protect the class of persons to which Plaintiffs belong from the kind of damage to real and personal property suffered by Plaintiffs, thus constituting negligence per se. (Emphasis added).

Defendants argue that plaintiffs' negligence per se charge provides an additional basis for concluding that federal jurisdiction exists since, even though the claim is not created by federal law, it still raises a substantial question of federal law as a necessary element of the state claim. They reason that since CERCLA provides a private right of action for the recovery of response costs, and since it has become apparent that CERCLA is included among those "other statutes and regulations" upon which plaintiffs' negligence per se claim is based, then the negligence per se claim must be treated as a CERCLA claim for jurisdictional purposes under the rationale espoused by the Supreme Court in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). In *Merrell Dow*, the plaintiffs, mothers who ingested the drug Benedectin during their pregnancies, filed suit against the defendant manufacturer of that drug alleging that the drug caused birth defects in their children. *Id.* at 805–06, 106 S.Ct. at 3230–31. The plaintiffs sued on common law theories of negligence, and cited the defendant's alleged violation of labeling standards under the Federal Food, Drug, and Cosmetic Act (FDCA), not as a basis for recovery, but as evidence of the defendant's negligence. *Id.* The Supreme Court concluded that because Congress did not intend to provide a private federal remedy for violations of the FDCA, then "the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional pur-

poses and the federal system." *Id.* at 814, 106 S.Ct. at 3235. The Court explained:

> We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal question jurisdiction.

*Id.* Manifestly, the Court's decision in *Merrell Dow* derived principally, if not exclusively, from the fact that the FDCA did not provide a federal right of action for its violation. *See id.* at 812, 106 S.Ct. at 3234 ("The significance of the necessary assumption that there is no federal private cause of action thus cannot be overstated."). Defendants here argue that the logical conclusion to be drawn from *Merrell Dow*, then, is that when a federal law, such as CERCLA, *does* provide a private cause of action, then a party seeking damages for a violation of that federal law should not be allowed to shield itself from federal jurisdiction by simply couching his claim as one under state law based upon negligence for violating the federal law. While the court is unpersuaded that the fact that CERCLA provides a private right of action for response costs is a sufficient reason, standing alone, to warrant the conclusion that federal jurisdiction is present,[6] the court might still be persuaded to declare the presence of federal jurisdiction over the present controversy if the plaintiffs had, in fact, charged a violation of CERCLA as a basis for their state law negligence claim. The court, however, after careful review and deliberation, cannot interpret plaintiffs' complaint, even when coupled with the allegations set forth in their preliminary injunction motion, as alleging a CERCLA violation as evidence of defendants' negligence. The court recognizes that plaintiffs did not necessarily limit the bases of the negligence per se allegations in their complaint to state stat-

---

**6.** *See Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 152 (4th Cir.1994) ("That is not to say that the presence of any private federal remedy would in all instances suffice to establish federal question jurisdiction."); *but cf. Sanford Street Local Dev. Corp. v. Textron, Inc.*, 768 F.Supp. 1218, 1224, *vacated on other grounds*, 805 F.Supp. 29 (W.D.Mich.1991) (negligence per se claim alleging a violation of federal statute is little different than an implied right of action under that statute for money damages).

utes and regulations; the only specific references were to state regulations for the disposal of hazardous waste and state oil and gas regulations, but plaintiffs also recited that defendants' alleged violations of other unidentified statutes and regulations provided evidence of defendants' negligence. In their brief accompanying their motion to remand, plaintiffs acknowledge that those "other statutes and regulations" include "one or more federal statutes and regulations." [7] As yet, however, they have not indicated that CERCLA is among those "federal statutes and regulations" which are claimed to have been violated. As indicated *supra*, plaintiffs did cite and discuss CERCLA in their motion for preliminary injunction filed in state court; had they not done so, this case would not even be in this forum. But plaintiffs did not suggest in that motion that the defendants' activities which formed the basis of plaintiffs' complaint, i.e., defendants' alleged creation of an accumulation of and/or their release of NORM on plaintiffs' property, violated CERCLA.[8] Rather, to reiterate, they claimed only that *if* the defendants fail to properly conduct any proposed cleanup, then

plaintiffs could potentially be liable to others under CERCLA. The court therefore rejects defendants' contention that plaintiffs' negligence per se allegations can be utilized as a basis for retaining the lawsuit in this federal forum. *Merrell Dow,* 478 U.S. at 810 n. 6, 106 S.Ct. at 3233 n. 6 ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.").[9]

### Injunctive Relief

■ Defendants argue, finally, that plaintiffs have invoked federal question jurisdiction by their reliance on CERCLA as a basis for their motion to enjoin defendants' cleanup of their property. They insist that plaintiffs' right to such injunctive relief "necessarily depends on resolution of a substantial question of federal law," *Franchise Tax Bd.,* 463 U.S. at 28, 103 S.Ct. at 2856, and thus gives rise to federal jurisdiction.[10] The court, however, is convinced that the CERCLA issue suggested by plaintiffs' motion for an injunction is neither substantial, nor need it necessarily be resolved in order for plaintiffs' entitlement to relief to be adjudicated. Plaintiffs

7. Plaintiffs explain that they "have stated a claim for negligence-per-se based on a good-faith belief that Defendants violated standards and guidelines set forth in one or more federal statutes and regulations."

8. It strikes the court that plaintiffs have been less than forthright in their filings relating to the present motion to remand. Plaintiffs could easily have identified the bases for the negligence per se claim, and cleared up any confusion about whether or not they rely on CERCLA in support of that claim. But they have not done so. They do say that their negligence per se claim is based on their good faith belief that defendants violated state and federal statutes and regulations, yet they have made no effort to identify which federal statutes they believe were violated, or more pertinently, whether CERCLA is among those federal statutes, thus leaving the court to devine their position from what little they have said on this subject. The court's task in that regard is complicated by what could be construed as conflicting signals from plaintiffs. On the one hand, they argue that *Merrell Dow* cannot be read to bar any negligence claim based on CERCLA, not because they have not alleged such a claim, but because they effectively have no private right of action at this time under CERCLA. At the same time, however, they state that they have not alleged that defendants have violated any CERCLA standard, requirement or order. In spite of the vagueness with which plaintiffs have approached

this matter, the court concludes that what is ultimately determinative here is what plaintiffs have alleged in their complaint. And in the court's opinion, no CERCLA claim, or claim based on any CERCLA violation, appears in the complaint or in plaintiffs' motion for injunctive relief.

9. The court would further note that the fact that plaintiffs have acknowledged reliance on defendants' alleged violation of "federal statutes and regulations" as a basis for their negligence per se claim is not sufficient to support a conclusion that federal question jurisdiction exists. As the Court in *Merrell Dow* made clear, "it would ... flout ... congressional intent to conclude that the federal courts might ... exercise federal-question jurisdiction and provide remedies for violations of [a] federal statute solely because the violation of the federal statute is said to be a 'rebuttable presumption' or a 'proximate cause' under state law, rather than a federal action under federal law." *Id.* at 812, 106 S.Ct. at 3234. Merely alluding to "federal statutes and regulations," without identifying those statutes and regulations, or disclosing their relationship to the lawsuit, cannot be held to provide a reason for this court's exercising jurisdiction.

10. The court need not repeat the substance of plaintiffs' CERCLA-related argument in support of their claim for injunctive relief.

have merely urged as *one* basis for their claim of irreparable harm the *possibility* that they might conceivably be held liable to third parties under CERCLA *if* the defendants were to improperly dispose of NORM contaminated soil from their property. This is, in the court's opinion, too insubstantial a federal issue to warrant the conclusion of jurisdiction.

### Plaintiffs' Motion for Sanctions

Plaintiffs have demanded the imposition of sanctions against defendants for their removal of this case, arguing that the removal was patently frivolous, and intended solely for the purpose of harassment and delaying this litigation. The court finds that plaintiffs' motion should be denied inasmuch as the court is of the opinion that defendants presented a reasonable argument for the existence of jurisdiction.

Based on the foregoing, it is ordered that plaintiffs' motion to remand is granted. It is further ordered that plaintiffs' request for sanctions is denied.

ORDERED.