Angela **AYRES** d/b/a **S & A Development Group, pro se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 04–987C.**

United States Court of Federal Claims.

Aug. 31, 2005.

Angela Ayres d/b/a S & A Development Group, District Heights, Maryland, pro se.

Nancy Myung–Jin Kim, United States Department of Justice, Washington, D.C., for defendant.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S JULY 14, 2005 MOTION TO RECONSIDER, PLAINTIFF'S JULY 25, 2005 MOTION TO AMEND, AND PLAINTIFF'S AUGUST 5, 2005 LETTER**

BRADEN, Judge.

On June 29, 2005, the court issued a Memorandum Opinion and Order resolving *pro se* Plaintiff's August 23, 2004 Motion for Summary Judgment and the United States' (the "Government") October 4, 2004 Motion to Dismiss and Cross–Motion for Summary Judgment. *See Ayres v. United States*, 66 Fed.Cl. 551 (2005). On July 14, 2005, Plaintiff filed a Motion to Reconsider ("Mot. To Recon."). On July 25, 2005, Plaintiff filed a Motion to Amend the June 10, 2004 Complaint. On August 5, 2005, Plaintiff sent a letter to Chambers with a cassette tape. On August 9, 2005, the Government filed an Opposition to Plaintiff's July 25, 2005 Motion to Amend. On August 17, 2005, Plaintiff filed a Response.

## A. The Court's Disposition Of Plaintiff's July 14, 2005 Motion to Reconsider.

On July 14, 2005, Plaintiff filed a Motion to Reconsider the June 29, 2005 Memorandum Opinion and Order asserting that the court: (1) mischaracterized Plaintiff's claims as tort claims for compensatory damages, because the June 10, 2004 Complaint requested penalties to be assessed against the Government for violations of the Residential Lead Based Paint Hazard Reduction Act of 1992, 42 U.S.C. §§ 4851 *et seq.* ("RLBPHRA") and the Toxic Substances Control Act, 15 U.S.C. §§ 2601 *et seq.* ("TSCA"); (2) erred in not transferring Plaintiff's claims to the United States District Court for the District of Maryland, because Plaintiff exhausted administrative remedies prior to filing the June 10, 2004 Complaint in the United States Court of Federal Claims; (3) erred in not transferring Plaintiff's "claim [to the United States District Court for the District of Maryland that] stems from the acts of Michaelson, Connor & Boul [("Michaelson") as] agents of the [G]overnment[.]" *See* Mot. To Recon. at 1–3.

**1. The Residential Lead–Based Paint Reduction Act of 1992 And The Toxic Substances Control Act Do Not Impose A Duty On The Government To Pay Damages For Violations Thereof.**

■ Plaintiff seeks reconsideration of the court's dismissal of the claims for alleged violations of the RLBPHRA and the TSCA. *See* Mot. To Recon. at 1. As the court previously held, Plaintiff, as the non-moving party, bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed.Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act."); *see also Roth v. United States*, 378 F.3d 1371, 1384 (Fed.Cir.2004) ("Because the Tucker Act itself does not provide a substantive cause of action, ... a plaintiff must find elsewhere a money-mandating source upon which to base a suit.").

Neither the TSCA nor the RLBPHRA award damages for a violation of any Section thereof. *See Ayres*, 66 Fed.Cl. at 561–63. Nevertheless, Plaintiff argued on reconsideration that penalties should be assessed against the Government. *See* Mot. To Recon. at 1–2. The TSCA does allow for the imposition of civil penalties against the United States, however, as a matter of law, a civil penalty is a "fine assessed for a violation of a statute or regulations." BLACK'S LAW DICTIONARY 1168 (8th ed.2004). A fine is "a pecuniary criminal punishment or civil penalty payable to the public treasury." *Id.* at 664. Plaintiff may not appreciate that, as a matter of law, a "penalty" is not money damages. *See, e.g., Sipes ex rel. Slaughter v. Russell*, 89 F.Supp.2d. 1199, 1204 (D.Kan.2000) ("On its face, though, 15 U.S.C. § 2615 permits only the United States (through the EPA) to impose fines and penalties on TSCA violators. It does not allow private citizens to enforce the penalty provisions as a method for recovering compensatory damages."). Since neither the TSCA nor the RLBPHRA impose a duty on the Government to pay money damages for violations thereof, as a matter of law, the United States Court of

Federal Claims has no jurisdiction over such claims. *See Ayres,* 66 Fed.Cl. at 561–63.

### 2. Plaintiff Did Not Exhaust Administrative Remedies Prior To Filing The June 10, 2004 Complaint In The United States Court Of Federal Claims.

■ Plaintiff requests the court's reconsideration of the decision not to transfer Plaintiff's tort claims to the United States District Court for the District of Maryland. *See* Mot. To Recon. 2–3. Plaintiff argues that the May 28, 2002 Emergency Violation Notice and Order to Remove Lead Nuisance ("Notice") forwarded to Michaelson, which in turn was forwarded to HUD, satisfied the requirements of filing an administrative action. *Id.* at 3. Faxing the Notice does not satisfy the requirements for initiating an administration complaint. *See* 28 C.F.R. § 14.2(a) (emphasis added) ("A claim shall be deemed to have been presented when a Federal agency receives from a claimant ... an executed Standard Form 95 or other written notification of an incident, *accompanied by a claim for money damages in a sum certain for injury to or loss of property,* personal injury, or death alleged to have occurred by reason of the incident[.]"). Therefore, transfer is not in the interest of justice since the United States District Court for the District of Maryland would not have jurisdiction over Plaintiff's alleged tort claims because Plaintiff's administrative remedies were not exhausted prior to filing the June 10, 2004 Complaint in the United States Court of Federal Claims. *See Ayres,* 66 Fed.Cl. at 564.

Second, Plaintiff argues that transfer is required because the time for filing an administrative claim was tolled, when the United States was substituted as the defendant in this action, pursuant to 28 U.S.C. § 2679. *See* Mot. To Recon. at 3 (citing 28 U.S.C. § 2675). Plaintiff fails to appreciate that 28 U.S.C. § 2675 has never been invoked in this case. As a threshold matter, Section 2679 requires certification by the Attorney General for substitution. *See* 28 U.S.C. § 2679 ("Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."). No such substitution was requested or took place in this case. In addition, Section 2679 only would apply if Plaintiff's claim had been filed in a United States District Court.

Third, although Plaintiff initially named three individuals as defendants, this case was docketed as *Ayres v. United States* and all subsequent pleadings were filed and docketed under this caption. To the extent that the June 10, 2004 Complaint asserts claims against individuals, the court held that the United States Court of Federal Claims does not have jurisdiction since claims for alleged wrongful conduct by governmental officials in their official capacity are tort claims over which the court does not have jurisdiction. *See Ayres,* 66 Fed.Cl. at 557, 560 (citing 28 U.S.C. § 1491 ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States[.]")); *see also United States v. Sherwood,* 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) ("[The United States Court of Federal Claims] jurisdiction is confined to the rendition of money judgments in suits brought for that relief against the United States, and if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."). Nevertheless, the court analyzed the asserted claims to ascertain whether Plaintiff had any viable cause of action against the United States and held that the United States Court of Federal Claims did not have jurisdiction over the claims alleged in the June 10, 2004 Complaint for violations of the TSCA, the LPPPA, and the RLBPHRA. *See Ayres,* 66 Fed.Cl. at 561–63.

For these reasons, the public interest is not served by transferring the Plaintiff's tort claims against the Government or government officials acting in their official capacity,

to the United States District Court for the District of Maryland, because Plaintiff did not exhaust administrative remedies prior to filing the June 10, 2004 Complaint in the United States Court of Federal Claims.

### 3. Plaintiff's Claims Against Michaelson, Conner And Boul.

The June 10, 2004 Complaint also alleged claims for violations of the TSCA, LPPPA, and the RLBPHRA against Michaelson as "agents of the government." *See* Compl. at 1–2. On reconsideration Plaintiff argues that, in light of the court's June 29, 2005 Memorandum and Opinion and Order, if the Government is not liable for the acts of Michaelson then Plaintiff's statutory claims against Michaelson should be transferred to the United States District Court for the District of Maryland. *See* Mot. To Recon. at 3.

#### a. Plaintiff's Claims Against Michaelson, Connor And Boul Under The Toxic Substances Control Act.

■ Any person may commence a civil action "(1) against any person ... who is alleged to be in violation of this chapter or any rule promulgated under section 2603, 2604, or 2605 of this title, or subchapter II or IV of this chapter ... to restrain such violation[.]" 15 U.S.C. § 2619. Jurisdiction for such claims is proper in the United States District Court for the district in which the alleged violation occurred or in which the defendant resides or in which the defendant's principal place of business is located. *Id.* Plaintiff's claims against Michaelson seek damages, rather than a restraint of a violation. *See, e.g., Sanford St. Dev. Corp. v. Textron, Inc.,* 768 F.Supp. 1218, 1223 (W.D.Mich.1991) (citations omitted) ("Given Congress' decision to grant only injunctive remedies to those aggrieved by a violation of the TSCA, this Court can not hold that a private right of action for money damages exists under it."); *see also Mair v. City of Albany, New York,* 303 F.Supp.2d 237, 243 (N.D.N.Y.2004) ("[T]he TSCA authorizes only the restraint, or stoppage, of ongoing activities. Ordering defendants back to the homes where abatement activity has ceased, to do more work, would not be a restraint or

a stoppage; it would be ordering an affirmative act.").

Therefore, transfer of the Plaintiff's claim against Michaelson for a violation of the TSCA is not in the interest of justice.

#### b. Plaintiff's Claims Against Michaelson, Connor And Boul Under The Lead–Based Paint Poisoning Prevention Act.

■ The Lead–Based Paint Poisoning and Prevention Act ("LPPPA"), 42 U.S.C §§ 4821 *et seq.,* authorizes HUD's development of demonstration and research programs and the promulgation by HUD of procedures to eliminate as far as practicable the hazards of lead based paint poisoning. There is absolutely no language in the LPPPA that authorizes a private cause of action against a private party for violation of any Section thereof. Therefore, transfer would serve no purpose since the United States District Court for the District of Maryland would be compelled to dismiss under Fed. R. Civ. P. 12(b)(1).

#### c. Plaintiff's Claims Against Michaelson, Connor And Boul Under The Residential Lead–Based Paint Reduction Act Of 1992.

■ Section 4852d(b) of the RLBPHRA provides for treble damages under certain circumstances:

> Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual.

42 U.S.C. § 4852d(b)(3); *see Sipes ex rel. Slaughter,* 89 F.Supp.2d at 1202 ("RLPHRA and its regulations provide private citizens a cause of action.").

In addition, implementing regulations of Section 4852d provide, in part:

§ 35.92 Certification and acknowledgment of disclosure.

(a) Seller requirements. Each contract to sell target housing shall include an attachment containing the following elements, in

the language of the contract (e.g., English, Spanish):

(1) A Lead Warning Statement consisting of the following language:

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

\*　　\*　　\*　　\*　　\*　　\*

(6) When any agent is involved in the transaction to sell target housing on behalf of the seller, a statement that:

(i) The agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d; and

(ii) The agent is aware of his/her duty to ensure compliance with the requirements of this subpart.

(7) The signatures of the sellers, agents, and purchasers, certifying to the accuracy of their statements, to the best of their knowledge, along with the dates of signature.

24 C.F.R. § 35.92(a).

§ 35.94 Agent responsibilities.

(a) Each agent shall ensure compliance with all requirements of this subpart. To ensure compliance, the agent shall:

(1) Inform the seller or lessor of his/her obligations under §§ 35.88, 35.90, and 35.92.

(2) Ensure that the seller or lessor has performed all activities required under §§ 35.88, 35.90, and 35.92, or personally ensure compliance with the requirements of §§ 35.88, 35.90, and 35.92.

(b) If the agent has complied with paragraph (a)(1) of this section, the agent shall not be liable for the failure to disclose to a purchaser or lessee the presence of lead-based paint and/or lead-based paint hazards known by a seller or lessor but not disclosed to the agent.

24 C.F.R. § 35.94.

In reviewing the Lead–Based Paint Addendum to the Contract on reconsideration, it appears that the Lead Warning Statement, required by 24 C.F.R. § 35.92(a)(1), may not have been included in the Contract or the Addendum. *See* Gov't App. 1–13. The RLBPHRA provides for a private right of action against "any person." *See* 42 U.S.C. § 4852d(b). Plaintiff's June 10, 2004 Complaint alleging a claim against Michaelson for violation of the RLBPHRA facially would appear to meet the requirements of FED. R. CIV. P. 12(b)(6). *See, e.g., Flowers v. ERA Unique Real Estate, Inc.,* 170 F.Supp.2d 840, 843 (N.D.Ill.2001) ("When a seller enters into a contract to list property for sale with a real estate broker or agent, the Act explicitly dictates that the regulations promulgated thereunder shall require the 'agent, on behalf of the seller' to 'ensure compliance' with the disclosure requirements of the Act."). Therefore, transfer of the claim in the June 10, 2004 Complaint against Michaelson for an alleged violation of the Residential Lead Based Paint Hazard Reduction Act of 1992, 42 U.S.C. §§ 4851 *et seq.,* to the United States District Court for the District of Maryland would be in the interest of justice. *See* Compl. at 1.

In addition, if the United States Court of Federal Claims dismissed Plaintiff's claim against Michaelson for an alleged violation of the RLBPHRA, Plaintiff could not file a new action in the United States District Court for the District of Maryland as it would be barred by the statute of limitations. Plaintiff signed the Contract for the purchase of the Property on May 1, 2002, requiring filing on or before May 1, 2005. *See Wilson v. Gar-*

cia, 471 U.S. 261, 266, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."); see also Schalk v. Associated Anesthesiology Practice, 316 F.Supp.2d 244, 250 (D.Md.2004) ("This is a two-step process: first, the court must select the state statute that is most analogous to the federal claim, and then it must consider whether application of that limitations period is consistent with the federal statute and its underlying policies."); MD. CODE COURTS AND JUDICIAL PROCEEDINGS § 5–101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.").

When a civil action is filed and the court finds that "there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed[.]" 28 U.S.C. § 1631; see also Texas Peanut Farmers v. United States, 409 F.3d 1370, 1374 (Fed.Cir. 2005) (quoting Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir.1999) (citations omitted)) ("'A compelling reason for transfer is that the [plaintiff], whose case if transferred is for statute of limitations purposes deemed by section 1631 to have been filed in the transferor court . . . will be time-barred if his case is dismissed and thus has to be filed anew in the right court.'"). Therefore, for this additional reason, the public interest is served by transferring Plaintiff's statutory claims under the RLBPHRA against Michaelson as an independent contractor to the United States District Court for the District of Maryland.

### B. The Court's Disposition Of Plaintiff's July 25, 2005 Motion To Amend The June 10, 2004 Complaint.

■ In the June 29, 2005 Memorandum Opinion and Order, the court dismissed all of the June 10, 2004 Complaint's claims, except the claim alleging a breach of Section J of the Contract. See Ayres, 66 Fed.Cl. at 568.

In doing so, the court stated that, even if the claim for breach of Section J of the Contract was established, Plaintiff would not be entitled to recovery of all expenses for removal of all lead-based paint in the Property required to comply with Maryland state law and regulations:

Compliance with Maryland state law requires more than merely treating defective paint surfaces as required by Section J. Therefore, even if HUD treated any defective paint surfaces that may have been found in the Property, as required by Section J, Plaintiff still would have been required under Maryland state law to abate[1] all lead-containing substances,[2] not just treat defective paint surfaces.

Under the Contract, Plaintiff acknowledged responsibility to ascertain that the Property was in an acceptable condition to comply with laws, regulations and ordinances affecting the Property, and that Plaintiff agreed to accept the Property in the condition existing on the date of the Contract. See Gov't App. at 2 ¶ B. Plaintiff also agreed "that Seller's inspection and/or treatment is not intended to, nor does it guarantee or warrant that all lead-based paint and all potential lead-based paint hazards have been eliminated from the property." See Gov't App. at 2 Section J. Moreover, in Section B, HUD expressly disclaimed any warranty that the Property was free of lead-based paint.

1 Under Maryland state law, "'[a]bate' or 'abatement' means the elimination of exposure to lead-based substances that may result in lead toxicity or poisoning, by the removal or encapsulation of lead-containing substances, by thorough cleanup procedures, and by post-cleanup treatment of surfaces." COMAR 26.02.07.02(B)(1).

2 "Lead-containing substance" is defined under Maryland state law as "any paint, plaster or other surface coating material containing more than 0.50 percent lead by weight calculated as lead metal in the dried solid, or more than 0.7 milligrams per square centimeter by the

X-ray fluorescense analyzer." COMAR 26.02.07.02(B)(9).

*Id.*

Under the same rationale, the court held that Plaintiff was precluded from asserting a claim for injunctive relief requiring HUD to abate the Property, based on the Government's alleged breach of Section J of the Contract. *See Ayres*, 66 Fed.Cl. at 565 ("Plaintiff has conceded that the obligations imposed on HUD under the RLPHRA, TSCA, and LPPPA are not dependent upon the contract and any alleged liability of the Government for violations thereof do not flow from HUD's alleged breach of Section J of the Contract[.]"). Nevertheless, on July 25, 2005, Plaintiff filed a Motion to Amend the June 10, 2004 Complaint to allege a claim for injunctive relief to compel HUD to abate the Property.

In light of the dismissal or transfer of Plaintiff's other claims, the court has no independent jurisdiction to grant injunctive relief. *See Brown v. United States*, 105 F.3d 621, 624 (Fed.Cir.1997) ("The Tucker Act does not provide independent jurisdiction over ... claims for equitable relief."). Accordingly, Plaintiff's July 25, 2005 Motion to Amend the June 10, 2004 Complaint to assert a claim for injunctive relief requiring HUD to abate the Property is denied.

## C. The Court's Disposition Of Plaintiff's August 5, 2005 Letter To Chambers.

On August 5, 2005, Plaintiff sent a letter to Chambers, together with a cassette tape. The Clerk is hereby ordered to return Plaintiff's letter and cassette tape. All requests for relief are to be made in the form of a motion, served on opposing counsel, and filed with the Clerk of the Court. *See* RCFC 7 (Pleadings Allowed; Form of Motions); *see also* RCFC 5(a) (Service: When Required); RCFC 5(e) (Filing with the Court Defined).

## CONCLUSION

Plaintiff's July 14, 2005 Motion to Reconsider is granted, in part, and denied, in part. The Clerk of the Court is ordered to transfer Plaintiff's claim against Michaelson, Connor & Boul under the Residential Lead–Based Paint Reduction Act of 1992, 42 U.S.C.

§§ 4851 *et seq.*, to the United States District Court for the District of Maryland. All other claims are dismissed as discussed in the court's June 29, 2005 Memorandum Opinion and Order, except Plaintiff's claim against the Government for breach of Section J of the Contract. *See Ayres v. United States*, 66 Fed.Cl. 551 (2005).

Plaintiff's July 25, 2005 Motion to Amend the June 10, 2004 Complaint to request injunctive relief is denied.

The Clerk of the Court is also ordered to return Plaintiff's August 5, 2005 letter and cassette tape sent to Chambers.

The court will convene a telephone status conference on September 13, 2005 at 3:00 p.m. E.S.T. to discuss further proceedings in this matter.

**IT IS SO ORDERED.**