Angela **AYRES** d/b/a S & A Development Group, pro se, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 04–987C.

United States Court of Federal Claims.

June 29, 2005.

Angela Ayres d/b/a S & A Development Group, District Heights, Maryland, pro se.

Nancy Myung–Jin Kim, United States Department of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

BRADEN, Judge.

### RELEVANT FACTS [1]

On February 12, 2002, the United States Department of Housing and Urban Development ("HUD") acquired property located at 2710 Classen Avenue, Baltimore, Maryland (the "Property") after the former owner defaulted on an FHA-insured mortgage. *See* Pl. Opp.App. Ex. 16; *see also* Gov't App. at 19.[2] When the Property was acquired, HUD assigned Michaelson, Connor & Boul, Inc. ("Michaelson") to be the contractor responsible for the management and disposition of the Property. *See* Gov't App. at 20. On February 15, 2002, AAA Appraisers prepared a Uniform Residential Appraisal Report ("Appraisal Report") for HUD. *See* Compl. Ex. G. The Appraisal Report noted that the Property was in "below average condition due to lack of maintenance," but that "[t]here were no adverse environmental

---

1. The relevant facts recited herein were derived from: Plaintiff's June 10, 2004 Complaint ("Compl."); Plaintiff's July 19, 2004 Amendment to Complaint ("Am.Compl."); Plaintiff's August 23, 2004 Motion for Summary Judgment ("Pl. Mot.S.J.") and Appendix thereto ("Pl.App."); Plaintiff's August 23, 2004 Proposed Findings of Uncontroverted Fact ("Pl.Prop.Findings"); Plaintiff's August 27, 2004 Amendment to Motion for Summary Judgment ("Pl.Am.Mot.S.J."); Defendant's October 4, 2004 Motion to Dismiss and Cross–Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Gov't Mot. Dismiss/S.J.") and Appendix thereto ("Gov't App."); Defendant's October 4, 2004 Proposed Findings of Uncontroverted Fact ("Gov't Prop. Findings"); Defendant's October 4, 2004 Response to Plaintiff's Proposed Findings ("Gov't Resp."); Plaintiff's November 17, 2004 Motion in Opposition of Defendant Motion for Summary Judgment and/or Dismissal ("Pl. Opp.") and Appendix thereto ("Pl.Opp.App."); Plaintiff's November 17, 2004 Response to Defendant's Proposed Findings ("Pl.Resp."); Defendant's December 29, 2004 Reply to Plaintiff's Opposition ("Gov't Reply").

2. "After mortgage foreclosure, if the lender is the highest bidder, the lender deeds the property to the Secretary of Housing and Urban Development in exchange for a mortgage insurance claim payment." Gov't App. at 19–20 (Declaration of Cheryl B. Walker, Director, Real Estate Owned Division, Philadelphia Homeownership Center).

conditions noted at the visual interior and exterior inspection." *Id.*

On May 1, 2002, Plaintiff signed a Sales Contract (the "Contract") to purchase the Property from HUD. *See* Gov't App. at 1–13.[3] The Contract provided that title to the Property was to be taken in the name S & A Development Group. *See* Gov't App. at 1 ¶ 2. The purchase price was $3,503.00 and the net amount due HUD was $3,297.00 after commissions were paid to the broker. *Id.* at ¶¶ 3, 6a, 6b, 7. The Contract specified that Plaintiff would pay in cash or apply for other non-FHA financing. *Id.* at ¶ 4. The Contract was accepted by HUD on May 10, 2002 and became effective on that date. *See* Gov't App. at 1, 2 ¶ K.

Paragraph B of the Conditions of Sale provided:

> Seller makes no representations or warranties concerning the condition of the property, including, but not limited to mechanical systems, dry basement, foundation, structural, or compliance with code, zoning or building requirements and will make no repairs to the property after execution of this contract. Purchaser understands that regardless of whether the property is being financed with an FHA-insured mortgage, Seller does not guarantee or warrant that the property is free of visible or hidden structural defects, termite damage, lead-based paint, or any other condition that may render the property uninhabitable or otherwise unusable. Purchaser acknowledges responsibility for taking such action as it believes necessary to satisfy itself that the property is in a condition acceptable to it, of laws, regulations and ordinances affecting the property, and agrees to accept the property in the condition existing on the date of this contract. It is important for Purchaser to have a home inspection performed on the property in order to identify any possible defects. If FHA insured financing is used, up to $200 of the cost to perform the inspection may be financed into the mortgage. Names of home inspection companies can be found in the yellow pages of your telephone directory under the heading "Home Inspection Services."

Gov't App. at 2 ¶ B. The Contract was signed by a broker for Coldwell Banker Stevens Realtors that certified that the broker "explained fully to the purchaser the entire terms of the contract, including Condition B on the reverse hereof[.]" Gov't App. at 1.

Paragraph J of the Conditions of Sale further provided:

> If this property was constructed prior to 1978, Seller has inspected for defective paint surfaces (defined as cracking, scaling, chipping, peeling or loose paint on all interior and exterior surfaces). Seller's inspection found no defective paint surfaces, or if defective paint surfaces were found, Seller has treated or will treat such defective surfaces in a manner prescribed by Seller prior to closing. Purchaser understands and agrees that Seller's inspection and/or treatment is not intended to, nor does it guarantee or warrant that all lead-based paint and all potential lead-based paint hazards have been eliminated from this property. Purchaser acknowledges that he/she/it has received a copy of a pamphlet which discusses lead-based paint hazards and has signed, on or before the date of this contract, the Lead–Based Paint Addendum to Sales Contract—Property Built Before 1978. Purchaser understands that the Lead–Based Paint Addendum must be signed by all Purchasers and forwarded to Seller *with* this contract. Contracts which are not in conformance with these requirements will not be accepted by Seller.

Gov't App. at 2 ¶ J (emphasis in original).

On May 1, 2002, Plaintiff also signed a Lead–Based Paint Addendum—Property Built Before 1978 ("Addendum") that was attached to and incorporated into the Contract. *See* Gov't App. at 1 ¶ 11; *see also* Gov't App. at 3–13. The Addendum consisted of three parts: Part A, Seller's Disclosure; Part B, Purchaser's Acknowledgement; and Part C, Owner–Occupant Certification

---

**3.** Although the Complaint contained a copy of the Contract as Exhibits E and F, because such Exhibits are incomplete, the court will cite to the complete copy of the Contract contained in the Defendant's October 4, 2004 Appendix.

Form. Part A had two sections. The first Section contained the seller's disclosure regarding the presence of lead-based paint and/or lead-based paint hazards, and the Addendum indicated that HUD, as seller, had "no actual knowledge of lead-based paint hazards in the property." *See* Gov't App. at 3 ¶ A.2. The second Section contained a "no" written next to "Seller has provided the purchaser with all available records or reports pertaining to lead-based paint hazards in the property." This language was written by Plaintiff's realtor, because "[a]t no time was I given an inspection report or Lead–Base[d] paint records, to give to my client prior to the purchase of said property, by Michaelson, Connor & Boul, Inc. or HUD." *See* Pl. Opp. App. Ex. 5.

Part B of the Addendum included Purchaser's Acknowledgement of receiving the United States Environmental Protection Agency pamphlet, "Protect Your Family From Lead In Your Home." *See* Gov't App. at 3 ¶ D. In Part B, Plaintiff also waived a 10 day opportunity to conduct an assessment/inspection of the property. *See* Gov't App. at 3–4 ¶ E.2. It also contained a purchaser's acknowledgement that "Seller is under no obligation to correct any lead-based paint and/or lead-based paint hazards identified by the lead-based paint inspection and/or risk assessment." *See* Govt.App. at 4. Part C of the Addendum was not completed because this Part was to be completed by owner-occupant purchasers only. *See* Gov't App. at 4.

When the Contract was signed on May 1, 2002, Plaintiff certified that "in affixing her signature to this contract she understood that: (1) all the contents thereof (including the Conditions of Sale) and is in agreement therewith without protest; (2) Plaintiff assumed responsibility for knowing the full condition of the property; and (3) that Seller will not perform repairs after acceptance of this contract." Gov't App. at 1 ¶ 13.

On May 28, 2002, the Baltimore City Health Department issued an Emergency Violation Notice and Order to Remove Lead Nuisance ("Notice") to the Secretary of HUD as owner of the Property. *See* Pl.App. Ex. 3. The Notice indicated that an inspection of the dwelling revealed that the Property contained lead-based paint. *Id.*

The closing of the Contract for the purchase of the Property occurred on June 21, 2002. *See* Pl. Opp.App. Ex. 14; *see also* Gov't App. at 14–15. At the closing, Plaintiff signed a Notice to Buyers that contained a complete excerpt of paragraph B of Conditions of Sale to the Contract and also stated "I am aware that HUD *WILL NOT* make any repairs to the property after closing." *See* Gov't App. at 16 (emphasis in original).

On June 25, 2002, Michaelson received a copy of the May 28, 2002 Notice forwarded by Plaintiff to HUD. *See* Gov't App. at 17–18. On July 29, 2002, the Baltimore City Health Department issued an Emergency Violation Notice and Order to Remove Lead Nuisance to S & A Development Group, Angela Ayres, as owner of the Property. *See* Compl. Ex. H.

On August 22, 2002, Baltimore City Lead Abatement Action Project prepared a Work Scope Lead Hazard Reduction Spec detailing the work required to abate the Property in order to comply with the laws and regulations of the State of Maryland and City of Baltimore. *See* Pl. Opp.App. Ex. 6.

On October 4, 2002, an Inspector with Baltimore City spoke by telephone to Plaintiff, who indicated she was obtaining bids to abate the Property. *See* Pl.App. Ex. 8. On January 3, 2003, the Property was reinspected. *Id.* On January 6, 2003, the Inspector spoke with Plaintiff, who indicated she was having problems obtaining a contractor and was contemplating taking a class so she could perform the abatement work. *Id.*

On June 23, 2003, the Property was reinspected. *Id.* On June 25, 2003, a deadline of July 8, 2003 was established to begin abatement or the matter would be forwarded to Baltimore City Legal Department for enforcement. *Id.* On the same day, the Inspector again spoke to Plaintiff, who indicated that she still was attempting to contact a contractor to perform the work or would perform the abatement work after completing two additional classes. *Id.*

On September 29, 2003, the Property was reinspected; however, no abatement work

was in progress. *Id.* On October 1, 2003, a Violation Notice was set for a hearing in Maryland District Court in Baltimore before the Honorable Emanuel Brown, but was rescheduled for November 12, 2003. *Id.* On November 11, 2003, the Property was reinspected. *See* Pl.App. Ex. 8. On November 12, 2003, the Violation Notice was again set for a hearing, but was rescheduled. *Id.*

On December 12, 2003, the Property was again inspected and no abatement activity was noted. *Id.* On December 17, 2003, the Violation Notice was set for a hearing in Maryland District Court before the Honorable Jamey H. Wertzman, but was rescheduled for February 4, 2004. *Id.* On February 2, 2004, the Property was reinspected, again there was no abatement activity in progress. *Id.* On February 4, 2004, a Violation Notice was set for hearing before the Honorable Nathan Braverman, but was rescheduled for March 24, 2004. *Id.* On March 23, 2004, the Property was reinspected and no abatement activity was noted. *Id.* On March 24, 2004, Judge Braverman held a hearing on the Violation Notice and Plaintiff agreed to a Consent Order to abate the Property by September 24, 2004. *See* Pl.App. Ex. 8.

## PROCEDURAL BACKGROUND

On June 10, 2004, *pro se* Plaintiff Angela Ayres d/b/a S & A Development Group filed a Complaint in the United States Court of Federal Claims alleging breach of contract, material errors in a lead-based paint disclosure addendum, and violations of The Residential Lead–Based Paint Hazard Reduction Act of 1992, 42 U.S.C. §§ 4851 *et seq.*, and The Toxic Substance Control Act, 15 U.S.C. §§ 2601 *et seq.* *See* Compl. ¶¶ 9–15. The Complaint named as defendants: Alphonso Jackson, Secretary of the Department of Housing and Urban Development ("HUD"); James Kelly, Director of HUD; and Jackie Fantuzo, Public Information Officer of Mi-

chaelson, Connor & Boul, as agents for HUD. *See* Compl. ¶¶ 2–4.[4] The Clerk of the Court docketed the case as *Angela Ayres d/b/a S & A Development Group v. United States of America.* The case was assigned to the Honorable Diane Gilbert Sypolt.

On June 16, 2004, Judge Sypolt issued a Chambers Procedure Order. On July 15, 2004, the Government filed a Motion for Enlargement of Time to hold an early meeting of counsel and file initial disclosures as required under the Chambers Procedure Order. On July 19, 2004, Plaintiff filed a Motion Opposing Enlargement of Time and a Motion for Accelerated Decision. On the same date, Plaintiff also filed an Amendment to Complaint,[5] supplementing the prayer for relief in the Complaint to include a request for treble damages, pursuant to 40 C.F.R. §§ 745.100 *et seq.*, filing fees and costs. *See* Am. Compl. On July 20, 2004, Judge Sypolt granted the Government's July 15, 2004 Motion for Enlargement of Time.

On August 2, 2004, the Government filed a Motion for Enlargement of Time to respond to the Complaint, hold an early meeting of counsel, and file initial disclosures. On August 10, 2004, Plaintiff filed a Motion Opposing Enlargement of Time. On August 13, 2004, the Government filed an additional Motion for Enlargement of Time. On August 17, 2004, Plaintiff submitted a Motion for Summary Judgment; however, the Motion did not comply with RCFC 56(h)(1). On August 23, 2004, the Honorable Mary Ellen Coster-Williams, on behalf of Judge Sypolt, granted the Government's August 2, 2004 and August 13, 2004 Motions for Enlargement of Time and denied Plaintiff's Motion for Accelerated Decision. Judge Williams also allowed Plaintiff's August 17, 2004 Motion for Summary Judgment to be filed by leave. Plaintiff's motion was docketed on August 23, 2004.

---

4. Plaintiff styled the Complaint *Angela Ayres d/b/a S & A Development Group v. Alphonso Jackson, Secretary of HUD, James Kelly, Director, HUD, Jackie Fantuzo, Public Information Officer, Michaelson, Connor & Boul, Agents for HUD.* Subsequent filings have been correctly docketed as *Angela Ayres d/b/a S & A Development Group v. United States of America* (hereinafter, Defendant is referred to as "the Government.").

5. Although Plaintiff's filing is entitled "Amendment to Complaint," this pleading seeks only to supplement paragraphs 2 and 3 of the prayer for relief in the Complaint. Therefore, the court will treat this additional information as a supplement, rather than as a superseding Amended Complaint.

On August 27, 2004, Plaintiff filed an Amendment to Motion for Summary Judgment. On September 13, 2004, the Government filed an Answer. On the same date, the Government also submitted a Motion to Dismiss and Cross–Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment and Appendix, Proposed Findings of Uncontroverted Fact, and Response to Plaintiff's Proposed Findings of Uncontroverted Fact. The Government's filings also did not comply with the Rules of the United States Court of Federal Claims. On September 28, 2004, Plaintiff submitted a Motion for Enlargement of Time to respond to the Government's Motion to Dismiss. Accordingly, on September 29, 2004, the Honorable Bohdan A. Futey, on behalf of Judge Sypolt, issued an Order requiring the Clerk of the Court to return the Government's September 13, 2004 Motion to Dismiss and Cross–Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment and Appendix, Proposed Findings of Uncontroverted Fact, and Response to Plaintiff's Proposed Findings of Uncontroverted Fact, for failure to comply with RCFC 5.2(a)(1)(A) and RCFC 5.3(d), but granted leave of court to resubmit the filings out of time. On October 4, 2004, the Government's Motion to Dismiss and Cross–Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment and Appendix, Proposed Findings of Uncontroverted Fact, and Response to Plaintiff's Proposed Findings of Uncontroverted Fact were filed by leave of court.

On October 5, 2004, the Honorable Robert H. Hodges, Jr. issued an Order, on behalf of Judge Sypolt, granting Plaintiff's September 28, 2004 Motion for Enlargement of Time.

On November 17, 2004, Plaintiff filed a Motion in Opposition of Defendant's Motion for Summary Judgment and/or Dismissal. On the same date, Plaintiff also filed a Response to Defendant's Findings of Uncontroverted Fact. On November 19, 2004, the Government filed a Motion for Enlargement of Time to respond to Plaintiff's Opposition to the Government's Motion to Dismiss and Cross–Motion for Summary Judgment. On November 29, 2004, Chief Judge Edward J.

Damich, on behalf of Judge Sypolt, issued an order granting the Government's November 19, 2004 Motion for Enlargement of Time.

\* \* \* \* \* \*

On December 16, 2004, the case was reassigned to the undersigned judge. On December 29, 2004, the Government filed a Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss and Cross–Motion for Summary Judgment.

## DISCUSSION

### A. Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Therefore, in order to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States,* 386 F.3d 1091, 1094 (Fed.Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act."); *see also Roth v. United States,* 378 F.3d 1371, 1384 (Fed.Cir.2004) ("Because the Tucker Act itself does not provide a substantive cause of action, ... a plaintiff must find elsewhere a money-mandating source upon which to base a suit.").

For jurisdictional purposes, a statute or regulation is money-mandating if it "can fairly be interpreted as mandating compensation

[by the Federal Government] for damages sustained as a result of the breach of the duties [it] impose[s]." *Mitchell,* 463 U.S. at 217–19, 103 S.Ct. 2961. In *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003), the United States Supreme Court explained that:

this "fair interpretation" rule demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity .... It is enough, then that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be "lightly inferred," ... a *fair inference* will do.

*Id.* at 472–73, 123 S.Ct. 1126; *see also Fisher v. United States,* 402 F.3d 1167, 1173 (Fed. Cir.2005) ("[In a single step] the trial court determines both the question of whether the statute provides the predicate for its jurisdiction, and lays to rest for purposes of the case before it the question of whether the statute on its merits provides a money-mandating remedy.").

Although the Tucker Act expressly prohibits the United States Court of Federal Claims from exercising jurisdiction over cases "sounding in tort," the United States Court of Appeals for the Federal Circuit has held that "where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the [United States] Court of Federal Claims[.]" *Awad v. United States,* 301 F.3d 1367, 1372 (Fed.Cir.2002); *see also Wood v. United States,* 961 F.2d 195, 198 (Fed.Cir. 1992) (quoting *San Carlos Irrigation and Drainage Dist. v. United States,* 877 F.2d 957, 960 (Fed.Cir.1989)) ("If an action arises 'primarily from a contractual undertaking,' jurisdiction lies in the [United States] Claims Court 'regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract.' ").

■ Even though not directly stated in the Complaint, Plaintiff argues that the United States Court of Federal Claims has exclusive jurisdiction over all of Plaintiff's claims in this case under the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.,* because Plaintiff entered into a sales contract with HUD for purchase of the Property and HUD breached that contract. *See* Pl. Opp. at 4–5. The Contract Disputes Act, however, does not apply to real property sales contracts with the Government. *See* 41 U.S.C. § 602. The Contract Disputes Act applies only to "any express or implied contract entered into by an executive agency for—(1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair or maintenance of real property; or, (4) the disposal of personal property." *Id.* Therefore, the Contract Disputes Act does not provide the United States Court of Federal Claims with jurisdiction to adjudicate Plaintiff's claims.

The Complaint properly alleges jurisdiction under 28 U.S.C. § 1491(a), but not under 15 U.S.C. §§ 2601 *et seq.,* 41 U.S.C. §§ 601 *et seq.,* 42 U.S.C. § 3545, 42 U.S.C. §§ 4821 *et seq.,* and 42 U.S.C. §§ 4851 *et seq. See* Compl. at ¶ 1; *see also* Pl. Opp. at 4.

**B.** *Pro Se* **Plaintiff Pleading Requirements.**

In the United States Court of Federal Claims, the pleadings of a *pro se* plaintiff traditionally have been held to a less stringent standard than those of a litigant represented by counsel. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)) (stating that *pro se* complaints " 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers[.]' "). Indeed, it has long been the role of this court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct.Cl. 456, 468, 412 F.2d 1285 (1969).

**C. Standard Of Review.**

**1. Motion To Dismiss.**

A challenge to the "court's general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule]

12(b)(1) motion." *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir.1999); *see also Fisher,* 402 F.3d at 1173 ("If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act."); RCFC 12(b)(1).

In deciding a motion to dismiss, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). Plaintiff, as the non-moving party, however, bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

Under Rule 12(b)(6), dismissal is "appropriate when facts as asserted do not entitle the claimant to a legal remedy." *Ainslie v. United States,* 355 F.3d 1371, 1373 (Fed.Cir. 2004); *see also Fisher,* 402 F.3d at 1175–76 (holding that if "plaintiff's cause rests on a money-mandating source, [but] on the merits plaintiff's case does not fit within the scope of that source ... plaintiff loses on the merits for failing to state a claim upon which relief can be granted."). The court "must accept all well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor" when deciding a Rule 12(b)(6) motion. *Ainslie,* 355 F.3d at 1373.

**2. Motion For Summary Judgment.**

On a motion for summary judgment, if there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. *See Moden v. United States,* 404 F.3d 1335, 1342 (Fed.Cir.2005) ("Summary judgment is only appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."); *see also* RCFC 56(c). Only genuine disputes of material facts that might

affect the outcome of the suit will preclude entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.... That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."). The existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id.* Therefore, there is no issue for the court to adjudicate unless the nonmoving party puts forth evidence sufficient for a jury to return a verdict for that party; but "if the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

The burden of demonstrating the absence of any genuine issue of material fact is on the party moving for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding the moving party must meet its burden "by 'showing'—that is pointing out to the [trial court] that there is an absence of evidence to support the nonmoving party's case."); *see also Riley & Ephriam Constr. Co., Inc.,* 408 F.3d 1369, 1371 (Fed.Cir.2005) ("The moving party bears the burden of demonstrating the absence of a genuine issue of material fact."). A summary judgment may be made without supporting affidavits and rely "solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Once the moving party demonstrates the absence of a genuine issue of material fact, however, the burden shifts to the non-movant to show the existence of a genuine issue for trial. *See Novartis Corp. v. Ben Venue Laboratories,* 271 F.3d 1043, 1046 (Fed.Cir.2001) (explaining that, once the

movant has demonstrated the absence of a genuine issue of material fact, "the burden shifts to the non-movant to designate specific facts showing that there is a genuine issue for trial.").

A trial court is required to resolve all doubt over factual issues in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). And, all reasonable inferences and presumptions must be resolved in favor of the non-moving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Moden,* 404 F.3d at 1342 ("[A]ll justifiable inferences [are drawn] in favor of the party opposing summary judgment.").

The fact that both parties have moved for summary judgment does not relieve the trial court of its responsibility to determine the appropriateness of summary disposition. *See Stratos Mobile Networks USA, LLC v. United States,* 213 F.3d 1375, 1379 (Fed.Cir.2000) (quoting *Prineville Sawmill Co., Inc. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988)) ("[The court] determines for itself whether the standards for summary judgment have been met."). Summary judgment will not necessarily be granted to one party or another when both parties have filed motions. *See California v. United States,* 271 F.3d 1377, 1380 (Fed.Cir.2001) ("The mere fact that the parties have cross-moved for summary judgment does not impel a grant of at least one motion[.]"). The court must evaluate each party's motion on its own merits. *Id.*

### D. Resolution Of The Government's Motion To Dismiss.

#### 1. The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Claims Of Alleged Wrongful Conduct By Government Officials.

■ The Complaint named as defendants Alphonso Jackson, Secretary of HUD, James Kelly, Director of HUD, and Jackie Fantuzo, Public Information Officer of Michaelson, Connor & Boul, as agents for HUD. Claims for alleged wrongful conduct by governmental officials in their official capacity are tort claims over which this court does not have jurisdiction. *See* 28 U.S.C. § 1346(b) ("[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."); *see also Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 391–94, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (holding that, under certain circumstances, a party may bring an action for violations of constitutional rights against Government officials in their individual capacities); *Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir. 1997) ("The Tucker Act grants the [United States] Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials.").

Therefore, the claims against individual defendants Alphonso Jackson, Secretary of HUD, James Kelly, Director of HUD, and Jackie Fantuzo, Public Information Officer of Michaelson, Connor & Boul, as agents for HUD, are dismissed for lack of subject matter jurisdiction. Since the Complaint was docketed as *Angela Ayres d/b/a S & A v. United States of America,* to the extent Plaintiff alleges claims against the United States, based upon conduct of agents of the United States, the court addresses such claims below.

#### 2. The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Claims For Alleged Violations Of The Toxic Substances Control Act, 15 U.S.C. §§ 2601 *et seq.,* The Lead–Based Paint Poisoning Prevention Act, 42 U.S.C. §§ 4821 *et seq.,* And The Residential Lead–Based Paint Hazard Reduction Act, 42 U.S.C. §§ 4851 *et seq.*

##### a. The Toxic Substances Control Act, 15 U.S.C. §§ 2601 *et seq.*

■ The Complaint alleges violations of the Toxic Substance Control Act ("TSCA"),

15 U.S.C. §§ 2601 *et seq.* *See* Compl. at ¶¶ 11–12. Although Section 2619 of the TSCA was not specifically invoked, it does create a private right of action against any person, including the United States, for violations thereof. Section 2619, however, does not mandate compensation for damages sustained as a result of a violation of any Section of the TSCA. *See* 15 U.S.C. § 2619. Instead, the specified private right of action authorizes suit against the United States only for injunctive relief,[6] and therefore vests exclusive jurisdiction in the United States District Courts, not the United States Court of Federal Claims.[7] *See Mulcahey v. Columbia Organic Chemicals Co., Inc.,* 29 F.3d 148, 150 (4th Cir.1994) (holding that the TSCA does not provide compensatory damages); *see also Arbor Hill Concerned Citizens Neighborhood Assoc. v. City of Albany, New York,* 250 F.Supp.2d 48, 60 (N.D.N.Y.2003) ("[T]he [TSCA] permits only restraint of violations of the TSCA, not restraints on the consequences of violations of the TSCA.... The TSCA is in place to serve as a procedural guide to abating homes with lead-based paint hazards."); *Sipes v. Russell,* 89 F.Supp.2d 1199, 1205 (D.Kan.2000) ("Section 2619 only provides injunctive relief for private plaintiffs ... not compensatory damages.").

Section 2688 of the TSCA "subjects the United States to federal, state and local requirements regarding lead-based paint and permits judicial and administrative imposition of civil penalties against the United States for lead-based paint violations at federal facilities." 15 U.S.C. § 2688.[8] Section

---

6. Section 2619 of the TSCA provides, in part:

Except as provided in subsection (b) of this section, any person may commence a civil action–

(1) against any person (including (A) the United States, and (B) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of this chapter or any rule promulgated under section 2603, 2604, or 2605 of this title, or subchapter II or IV of this chapter, or order issued under section 2604 of this title or subchapter II or IV of this chapter to restrain such violation, or

(2) against the Administrator to compel the Administrator to perform any act or duty under this chapter which is not discretionary.

15 U.S.C. § 2619.

7. "Any civil action under paragraph (1) shall be brought in the United States district court in which the alleged violation occurred or in which the defendant resides or in which the defendant's principal place of business is located. Any action brought under paragraph (2) shall be brought in the United States District Court for the District of Columbia, or the United States district court of the judicial district in which the Plaintiff is domiciled. The district courts shall have jurisdiction over suits brought under this section, without regard to the amount in controversy or the citizenship of the parties." 15 U.S.C. § 2619.

8. Section 2688 of the TSCA provides:

Each department, agency and instrumentality of executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility ... shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for certification, licensing, record-keeping, or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief) respecting lead-based paint, lead-based paint activities, and lead-based paint hazards in the same manner, and to the same extent as any nongovernmental entity is subject to such requirements, including the payment of reasonable service charges. The Federal, State, interstate, and local substantive and procedural requirements referred to in this subsection include, but are not limited to, all administrative orders and all civil and administrative penalties and fines regardless of whether such penalties or fines are punitive or coercive in nature, or whether imposed for isolated, intermittent or continuing violations. The United States hereby expressly waives any immunity otherwise applicable to the United States with respect to any such substantive or procedural requirement (including, but not limited to, any injunctive relief, administrative order, or civil or administrative penalty or fine referred to in the preceding sentence, or reasonable service charge). The reasonable service charges referred to in this section include, but are not limited to, fees or charges assessed for certification and licensing, as well as any other non-discriminatory charges that are assessed in connection with a Federal, State, interstate, or local lead-based paint, lead-based paint activities, or lead-based paint hazard activities program. No agent, employee, or officer of the United States shall be personally liable for any civil penalty under any Federal, State, interstate, or local law relating to lead-based paint, lead-based paint activities, or lead-based paint hazards with respect to any act or

2688, however, does not mandate compensation by the federal government for a violation thereof. *Id.*

Accordingly, this court does not have jurisdiction to adjudicate Plaintiff's claims asserted pursuant to the TSCA.

### b. Lead–Based Paint Poisoning And Prevention Act, 42 U.S.C. §§ 4821 *et seq.*

■ The Complaint also alleges that HUD violated Section 4822 of the Lead–Based Paint Poisoning and Prevention Act ("LPPPA"), 42 U.S.C §§ 4821 *et seq. See* Compl. ¶ 10. Section 4822 of the LPPPA authorizes the Secretary of HUD to establish and implement regulations "to eliminate as far as practicable the hazards of lead based paint poisoning with respect to any existing housing which may present such hazards and which is covered by an application for mortgage insurance or housing assistance payments under a program administered by the Secretary[.]" 42 U.S.C. § 4822(a)(1). Section 4822(a)(3) mandates that, beginning in January 1995, procedures established under paragraph (1) and (2) require the inspection and abatement of lead-based paint hazards in all federally owned target housing constructed prior to 1960. *See* 42 U.S.C. § 4822(a)(3). There is no language in Section 4822 of the LPPPA, however, that mandates compensation by the federal government for damages sustained as a result of a violation thereof. *See Roseberry v. United States,* 736 F.Supp. 408, 410 (D.N.H.1990) ("[T]he Act [42 U.S.C. § 4822] does not give plaintiffs an independ-

dent basis to assert a cause of action for money damages.").

Assuming *arguendo* that Section 4822 mandated compensation, however, this statute applies only to housing covered by mortgage insurance or housing assistance payments. Since Plaintiff purchased the Property with cash, it was not covered by mortgage insurance nor was Plaintiff the recipient of housing assistance payments. *See* Gov't App. at 1.

For these reasons, the court does not have jurisdiction to adjudicate Plaintiff's claims under the LPPPA.

### c. Residential Lead–Based Paint Hazard Reduction Act of 1992, 42 U.S.C. §§ 4851 *et seq.*

■ In addition, the Complaint alleges that HUD violated the Residential Lead–Based Paint Hazard Reduction Act ("RLPHRA"), 42 U.S.C. §§ 4851 *et seq.*, and regulations promulgated thereunder. First, the Complaint alleges a violation of Section 4852d concerning the disclosure of lead-based paint hazards in target housing,[9] offered for sale or lease. *See* Compl. ¶ 9(a). In the alternative, the Complaint alleges violations of the following regulations promulgated under Section 4852d: 24 C.F.R. §§ 35.815, 35.820, 35.830, 35.86; 40 C.F.R. part 35; 40 C.F.R. part 745. *See* Compl. ¶¶ 9(b)-(d).

Section 4852d and implementing regulations require that every contract for the sale of target housing contain a Lead Warning Statement[10] and a statement signed by the purchaser that:

> Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible

---

omission within the scope of his official duties.

15 U.S.C. § 2688.

**9.** "Target housing" is defined under the RLPHRA as "housing constructed prior to 1978, except housing for the elderly or persons with disabilities (unless any child who is less than 6 years of age resides or is expected to reside in such housing for the elderly or persons with disabilities) or any 0–bedroom dwelling." 42 U.S.C. § 4851(b)(27).

**10.** The RLPHRA provides that the Lead Warning Statement will contain the following text in large type on a separate sheet of paper attached to a contract for the purchase and sale of any interest in target housing:

(a) the purchaser has read the Lead Warning Statement and understands its contents; (b) received the lead hazard information pamphlet; and (c) had a 10–day opportunity before becoming obligated under the contract to purchase the housing to conduct a risk assessment or inspection for the presence of lead-based paint hazards. 42 U.S.C. § 4852d(a)(1), (2); *see also* 24 C.F.R. § 35.500 *et seq.*

In addition, Section 4852d(b) of the RLPHRA provides, in part:

(3) Civil liability

Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual.

(4) Costs

In any civil action brought for damages pursuant to paragraph (3), the appropriate court may award court costs to the party commencing such action, together with reasonable attorney fees and any expert witness fees, if that party prevails.

42 U.S.C. § 4852d(b)(3), (4).[11]

Although Section 4852d(b) provides a private right of action for damages against "any person," Section 4852d(b) does not mandate compensation from the federal government for damages sustained as a result of a violation of the RLPHRA. *See Cudjoe v. Dep't of Veterans Affairs,* 2004 WL 1447834 (E.D.Pa. 2004) ("Neither [the RLPHRA nor the TSCA] provide a waiver of sovereign immunity to allow private plaintiffs to sue the United States for money damages. . . . The Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.,* is the proper vehicle for relief.").

Plaintiff argues that, because the TSCA, 15 U.S.C. § 2688, requires that the Government and all agencies comply with all federal substantive and procedural requirements regarding lead-based paint, lead-based paint activities, and lead-based paint hazards in the

same manner, and to the same extent as any nongovernmental entity, such requirement therefore subjects the federal government to the same liability as "any person" as set forth in 42 U.S.C. § 4852d(b)(3). Although the Government must comply with Section 4852d of the RLPHRA and issue implementing regulations, neither 15 U.S.C. § 2688 nor 42 U.S.C. § 4852d mandates the right of recovery for damages from the Government. The United States' waiver of immunity under the TSCA applies only to "substantive or procedural requirement[s] (including, but not limited to, any injunctive relief, administrative order, or civil or administrative penalty or fine referred to in the preceding sentence, or reasonable service charge)," not liability for damages. *See* 15 U.S.C. § 2688. Therefore, the court does not have jurisdiction to adjudicate Plaintiff's claims under the RLPHRA.

**d. The Housing And Urban Development Reform Act, 42 U.S.C. § 3545.**

■ The Complaint further alleges that Plaintiff is entitled to compensatory and punitive damages under the Housing and Urban Development Reform Act, 42 U.S.C. § 3545. *See* Compl. at 6 ¶ 2 (Prayer for Relief); *see also* Am. Compl. ¶ 2. Section 3545 of that Act authorizes the Secretary of HUD to impose civil money penalties upon any person who knowingly and materially violates the provisions related to the disclosure of information by applicants seeking such assistance. *See* 42 U.S.C. § 3545. Section 3545, however, does not mandate compensation by the federal government for damages sustained for such a violation. Since Plaintiff did not seek financial assistance from HUD, Section 3545 is not applicable to the claims asserted in this case. Section 3545 only applies if Plaintiff, not HUD, violated the disclosure of information provisions of that Section.

---

lead-based paint hazards is recommended prior to purchase.
42 U.S.C. § 4852d(a)(3).

**11.** Section 4852d(a)(5) of the RLPHRA also provides that suit may be brought against HUD

under the TSCA, 15 U.S.C. § 2619, to compel promulgation of the regulations required under Section 4852d, and jurisdiction to order promulgation lies with the United States District Courts.

Therefore, the court has determined that United States Court of Federal Claims does not have jurisdiction to adjudicate claims asserted under the Housing and Urban Development Reform Act in this case.

3. **Transfer Of Plaintiff's Claims For Violations Of The Toxic Substances Control Act, 15 U.S.C. §§ 2601 *et seq.,* The Lead–Based Paint Poisoning Prevention Act, 42 U.S.C. §§ 4821 *et seq.,* And The Residential Lead–Based Paint Hazard Reduction Act, 42 U.S.C. §§ 4851 *et seq.* To A United States District Court Would Not Be In The Interest Of Justice.**

■ Section 1631 of Title 28 of the United States Code provides:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed[.]

28 U.S.C. § 1631; *see also Texas Peanut Farmers v. United States,* 409 F.3d 1370, 1373–75 (Fed.Cir.2005) (quoting *Phillips v. Seiter,* 173 F.3d 609, 610 (7th Cir.1999) (citations omitted)) (" 'A compelling reason for transfer is that the [plaintiff], whose case if transferred is for statute of limitations purposes deemed by section 1631 to have been filed in the transferor court ... will be time-barred if his case is dismissed and thus has to be filed anew in the right court.' ").

Since neither the TSCA, the LPPPA, nor the RLPHRA mandate compensation by the federal government for damages sustained as a result of the breach of the duties imposed by such statutes, the Federal Tort Claims Act would be the proper vehicle for relief. *See* 28 U.S.C. §§ 2671 *et seq.* The Federal Tort Claims Act, however, requires that a claimant file an administrative claim with the appropriate federal agency prior to filing suit. *See* 28 U.S.C. § 2675(a) ("[C]laimant shall have first presented the claim to the appropriate Federal agency and his` claim shall have been finally denied by the agency in writing and sent by certified or registered mail."); *see also McNeil v. United States,*

508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("The most natural reading of the [FTCA] indicates that Congress intended to require complete exhaustion of [administrative] remedies before invocation of the judicial process.... The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); 28 C.F.R. § 14.2(a) ("A claim shall be deemed to have been presented when a Federal agency receives from a claimant ... an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident[.]").

Plaintiff has failed to exhaust administrative remedies prior to filing suit as required by the Federal Tort Claims Act. Therefore, a federal district court, upon transfer, also would not have jurisdiction over Plaintiff's claims. *See Ahmed v. United States,* 30 F.3d 514, 516 (4th Cir.1994) (citation omitted) ("[T]he requirement of filing an administrative claim is jurisdictional and may not be waived."). Accordingly, the court has determined that it would not be in the interest of justice to transfer Plaintiff's claims under the TSCA, the LPPPA, or the RLPHRA to a federal district court.

4. **The United States Court of Federal Claims Has Jurisdiction To Adjudicate Plaintiff's Breach Of Contract Claim.**

■ The Government argued that, because all of the claims in this case sound in tort, this court lacks jurisdiction. *See* Gov't Mot. Dismiss/S.J. at 6. The Complaint, however, alleges a claim for breach of contract that is independent of Plaintiff's tort claims. The Complaint alleges that HUD breached the Contract, because HUD did not inspect or treat defective paint surfaces as required by Section J. *See* Compl. ¶ 13; *see also* Pl. Opp. at 11. The Complaint also alleges that HUD's representation in the Lead–Based Paint Addendum that "seller has no actual knowledge of lead-based paint hazards in the property" was false since the Government knew or had reason to know that a lead paint

danger existed on the Property. *See* Compl. ¶ 14; *see also* Pl. Opp. at 11. Although not directly stated in the Complaint, Plaintiff argued that the misrepresentation by HUD in connection with the Lead–Based Paint Addendum induced Plaintiff to waive the 10 day opportunity to conduct an assessment/inspection of the property. *See* Pl. Opp. at 12.

The United States Court of Federal Claims has jurisdiction to adjudicate the breach of contract claim for HUD's alleged violation of Section J of the Contract and Plaintiff's alleged contractual misrepresentation claim. *See* 28 U.S.C. § 1491(a)(1); *see also Awad*, 301 F.3d at 1372 ("[W]here a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the Court of Federal Claims to the extent that damages exceed $10,000."); *Wood v. United States*, 961 F.2d 195, 198 (Fed.Cir.1992) ("[W]here the 'tort' complained of is based entirely upon breach by the government of a promise made by it in a contract so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim, we do not think that the common law or local state law right to waive the breach and sue in tort brings the case within the Federal Tort Claims Act.").

Plaintiff argues that, because she has alleged a breach of contract, the court has jurisdiction over all of Plaintiff's claims. Although, in some situations, this court has jurisdiction to hear tortious breach of contract claims, Plaintiff has conceded that the obligations imposed on HUD under the RLPHRA, TSCA, and LPPPA are not dependent upon the contract and any alleged liability of the Government for violations thereof do not flow from HUD's alleged breach of Section J of the Contract or from any misrepresentation. *See* Pl. Opp. at 9 ("Such obligations are not dependent upon the contract."). Further, the statutory duties imposed upon HUD under the TSCA, LPPPA, and RLPHRA were not incorporated into the contract and cannot be the basis for a breach of contract claim by Plaintiff.

*See Scott Timber Co. v. United States*, 333 F.3d 1358, 1369 (Fed.Cir.2003) ("[V]iolations of statutory obligations not incorporated into the contract cannot constitute, by themselves, a breach of contract[.]"). The alleged breach of any obligations imposed by the RLPHRA, TSCA, or LPPPA are torts that stand separate and apart from the alleged breach of contract at issue. In addition, neither the TSCA, LPPPA, or the RLPHRA mandate compensation by the Federal Government for damages sustained as a result of a violation of any of these statutes. Therefore, the court has determined that it has jurisdiction to adjudicate Plaintiff's alleged breach of contract claim, but that exercise of jurisdiction does not permit adjudication of Plaintiff's claims for breach of the statutory duties imposed by the TSCA, LPPPA, or the RLPHRA.

### 5. The Complaint Has Failed To State A Cause of Action Upon Which Relief Can Be Granted For Misrepresentation Or Fraud.

Although not clearly asserted in the Complaint, Plaintiff argues that she was induced to waive an opportunity to conduct a risk inspection/assessment of the Property and to enter into the Contract by misinformation provided by HUD. *See* Compl. ¶ 18; *see also* Pl. Opp. at 12–14. The Complaint indirectly asserts that Plaintiff's waiver was based upon: (1) information in the appraisal report that no environmental hazards existed on the property; (2) HUD's affirmation in the Lead–Based Paint Addendum that HUD had no actual knowledge of lead-based paint hazards in the property; and (3) Plaintiff's expectation that HUD would comply with Section J of the Contract. *See* Compl. ¶¶ 13–15, 18; *see also* Pl. Opp. at 12–14.

To recover for contractual misrepresentation in this case,[12] Plaintiff must establish that: (1) HUD made a misrepresentation; (2) the misrepresentation was either a fraudulent or a material misrepresentation; (3) the misrepresentation induced Plaintiff to make the contract; and (4) Plaintiff was justified in relying on the misrepresentation.

---

12. To the extent Plaintiff argues a tort theory of misrepresentation, this court does not have subject matter jurisdiction over tort claims. *See* 28 U.S.C. § 1491(a)(1).

*See* RESTATEMENT (SECOND) CONTRACTS ("RE-STATEMENT") § 164 (1981); *see also Barron Bancshares, Inc. v. United States,* 366 F.3d 1360, 1381 (Fed.Cir.2004) (quoting RESTATE-MENT § 164) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."); *T. Brown Constructors, Inc. v. Pena,* 132 F.3d 724, 729 (Fed.Cir.1997) ("In order for a [plaintiff] to prevail on a claim of misrepresentation, [plaintiff] must show that the Government made an erroneous representation of a material fact that the contractor reasonably relied on to the contractor's detriment."); RESTATEMENT § 162 ("A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so.").

 Plaintiff argued that the statement in the appraisal report that there were no adverse environmental conditions noted at the visual interior and exterior inspection induced her to enter into the Contract and waive the opportunity to conduct a risk assessment of the Property. *See* Pl. Opp. at 11–13. Plaintiff, however, cannot satisfy the first element of contractual misrepresentation. The statement in the appraisal report was not made by HUD; instead it was made by an independent contractor. *See* Compl. Ex. G. Plaintiff also argued that she was entitled to recover for the material errors in the appraisal report, because Plaintiff was a third-party beneficiary to the appraisal contract between HUD and the appraiser. *See* Pl. Opp. at 13–14. The Government correctly countered that the preparation of the appraisal was not for the protection of Plaintiff as purchaser, but for the protection of the Government and its insurance funds. *See United States v. Neustadt,* 366 U.S. 696, 708–09, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) ("Appraisals ... inure, incidentally, to the benefit of prospective home purchasers ... but ...

[t]he primary and predominant objective of the appraisal system was the 'protection of the Government and its insurance funds'.... Never once was it even intimated that, by an FHA appraisal, the Government would, in any sense, represent or guarantee to the purchaser that he was receiving a certain value for his money."); *see also Glass v. United States,* 258 F.3d 1349, 1354 (Fed.Cir. 2001) ("In order to prove third party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly.").

 In addition, the Complaint indirectly alleges that HUD's affirmation in the Lead–Based Paint Addendum that HUD had no actual knowledge of lead-based paint hazards in the property was false and induced Plaintiff to enter into the Contract and waive the opportunity to conduct a risk assessment. *See* Compl. ¶ 14; *see also* Pl. Opp. at 12. The Baltimore Violation Notice sent to HUD on May 28, 2002, however, evidences that HUD had actual knowledge that lead-based paint hazards existed in the Property. *See* Compl. ¶¶ 8, 14; *see also* Pl. Opp. at 12–13. The Government correctly countered that the Violation Notice was issued after the Lead–Based Paint Addendum was prepared and signed by Plaintiff.[13] Therefore, the Violation Notice cannot evidence that HUD falsely stated or materially misrepresented that HUD had actual knowledge of lead-based hazards in the Property. Further, the Contract specifically provides that HUD did not guarantee or warrant that the Property was free of lead-based paint, and Plaintiff assumed responsibility to ascertain that the Property was in an acceptable condition, but agreed to accept the Property "as is."

The Complaint also indirectly alleged an expectation by Plaintiff that HUD would comply with obligations under Section J of the Contract that induced Plaintiff to enter

---

13. The RLPHRA and the Contract requires that the Lead–Based Paint Addendum be completed and signed by the Purchaser prior to the time that the Purchaser is obligated under the Contract. *See* 42 U.S.C. § 4852d(a)(3); *see also* 24 C.F.R. §§ 35.88, 35.90; Gov't App. at 2, Section

J. In this case, Plaintiff signed the Addendum at the same time the Contract was executed on May 1, 2002. The Contract was accepted by HUD on May 10, 2002, at which time Plaintiff became obligated thereunder.

into the Contract and waive the opportunity to conduct a risk assessment. *See* Compl. ¶¶ 13, 22. Although Plaintiff has stated a cause of action for an alleged breach of Section J of the Contract, Plaintiff cannot identify any specific misrepresentation by HUD in Section J of the Contract that induced Plaintiff to enter into the Contract. Under the terms of the Contract, it was Plaintiff's responsibility to satisfy herself that the property was acceptable and Plaintiff accepted the Property "as is."

### 6. The Complaint Has Stated A Cause Of Action Upon Which Relief Can Be Granted For Breach Of Section J Of The Contract.

To recover for breach of contract, a party "must allege and establish (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation and Drainage Dist.,* 877 F.2d at 959. The Government has not disputed the existence of the May 10, 2002 contract between Plaintiff and HUD. *See* Gov't Prop. Findings ¶¶ 1–8. The Complaint alleges that HUD breached Section J of the Contract, which provides:

> If this property was constructed prior to 1978, Seller has inspected for defective paint surfaces (defined as cracking, scaling, chipping, peeling or loose paint on all interior and exterior surfaces). Seller's inspection found no defective paint surfaces, or if defective paint surfaces were found, Seller has treated or will treat such defective surfaces in a manner prescribed by Seller prior to closing. Purchaser understands and agrees that Seller's inspection and/or treatment is not intended to, nor does it guarantee or warrant that all lead-based paint and all potential lead-based paint hazards have been eliminated from the property. Purchaser acknowledges that he/she/it has received a copy of a pamphlet which discusses lead-based paint hazards and has signed, on or before the date of this contract, the Lead–Based Paint Addendum to Sales Contract—Property Built Before 1978. Purchaser understands that the Lead–Based Paint Addendum must be signed by all Purchasers and

forwarded to Seller *with* this contract. Contracts which are not in conformance with these requirements will not be accepted by Seller.

Compl. Ex. E at 2 ¶ J (emphasis in original); *see also* Compl. ¶ 13. Plaintiff argues that the August 22, 2002 Work Scope Report evidences that there were defective paint surfaces in the Property that HUD would have discovered had it performed an inspection as required by Section J. *See* Pl. Opp. at 11. Plaintiff further argues that the August 22, 2002 Work Scope Report proves that HUD did not treat the defective paint surfaces in the Property as required by Section J of the Contract, because the Work Scope Report notes that there were some deteriorating paint surfaces in the Property. *See* Pl. Opp.App. Ex. 6. The Government contends that HUD only was required to treat defective paint surfaces if it found defective paint surfaces upon inspection of the Property but was not required to remove all lead hazards from the Property. *See* Gov't Mot. Dismiss/S.J. at 13–14.

Accepting Plaintiff's factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, the court has determined that the Complaint has stated a claim upon which relief can be granted for the Government's alleged breach of Section J of the Contract. *See Ainslie,* 355 F.3d at 1373. Indeed, the Government concedes that the Complaint properly alleges a breach of Section J of the Contract; however, that claim is the only one upon which Plaintiff may be able to obtain relief. *See* Gov't Mot. Dismiss/S.J. at 13–14; *see also* Gov't Reply at 7–8.

Assuming *arguendo* that Plaintiff prevails on a breach of Section J of the Contract, however, damages will be limited. Plaintiff will not be entitled to recovery of all expenses for removing all lead-based paint in the Property in order to comply with Maryland state law and regulations. Section J of the Contract defines defective paint surfaces "as cracking, scaling, chipping, peeling or loose paint on all interior and exterior surfaces." Pursuant to Section J, HUD was required to inspect for defective paint sur-

faces and if any such surfaces were found, to treat such surfaces prior to closing. Section J did not require HUD to remove all lead-based paint from the Property. Plaintiff has alleged that she incurred damages in order to comply with the City of Baltimore's Emergency Violation Notice and Order to Remove Lead Nuisance ordering Plaintiff to abate the property according to Rules and Regulations Governing Housing, Regulation No. 5, COMAR 26.02.07 (Procedures for Abating Lead Containing Substances from Buildings) and COMAR 26.16.01 (Accreditation and Training for Lead Paint Abatement Services). Compliance with Maryland state law requires more than merely treating defective paint surfaces as required by Section J. Therefore, even if HUD treated any defective paint surfaces that may have been found in the Property, as required by Section J, Plaintiff still would have been required under Maryland state law to abate [14] all lead-containing substances,[15] not just treat defective paint surfaces.

Under the Contract, Plaintiff acknowledged responsibility to ascertain that the Property was in an acceptable condition to comply with laws, regulations and ordinances affecting the Property, and that Plaintiff agreed to accept the Property in the condition existing on the date of the Contract. *See* Gov't App. at 2 ¶ B. Plaintiff also agreed "that Seller's inspection and/or treatment is not intended to, nor does it guarantee or warrant that all lead-based paint and all potential lead-based paint hazards have been eliminated from the property." *See* Gov't App. at 2 Section J. Moreover, in Section B, HUD expressly disclaimed any warranty that the Property was free of lead-based paint. Nevertheless, although these disclaimers may limit Plaintiff's damages, they do not affect HUD's duty under Section J of the Contract to inspect the property and, if defective paint surfaces were found, to treat

such defective paint surfaces. Therefore, if Plaintiff prevails on a claim for a breach of Section J of the Contract, Plaintiff's damages will be limited to the treatment of the defective paint surfaces that may have existed at the time HUD would have performed an inspection of the Property.

For the foregoing reasons, the court has determined that Plaintiff has stated a claim upon which relief can be granted for the Government's alleged breach of Section J of the Contract.

**E. The Government's Motion for Summary Judgment And Plaintiff's Cross-Motion Are Denied Because An Issue Of Fact Exists As To Whether HUD Complied With Section J Of The Contract.**

The Government has conceded that the Work Scope Report raises an issue of fact as to whether HUD inspected the Property for defective paint surfaces and found defective paint surfaces as required by Section J of the Contract. *See* Gov't Reply at 8. The presence of this factual issue precludes the court from granting the Government's Motion for Summary Judgment as to Plaintiff's alleged breach of Section J of the Contract. The Government's Motion as to Plaintiff's additional claims is denied since the court also does not have jurisdiction to adjudicate those claims.

In addition, Plaintiff's Motion for Summary Judgment as to whether HUD breached Section J of the Contract also is denied because factual issues concerning whether HUD inspected and treated defective paint surfaces exist. As to Plaintiff's additional claims, since the court does not have jurisdiction to adjudicate such claims, the Plaintiff's Motion for Summary Judgment is denied.

---

**14.** Under Maryland state law, " '[a]bate' or 'abatement' means the elimination of exposure to lead-based substances that may result in lead toxicity or poisoning, by the removal or encapsulation of lead-containing substances, by thorough cleanup procedures, and by post-cleanup treatment of surfaces." COMAR 26.02.07.02(B)(1).

**15.** "Lead-containing substance" is defined under Maryland state law as "any paint, plaster or other surface coating material containing more than 0.50 percent lead by weight calculated as lead metal in the dried solid, or more than 0.7 milligrams per square centimeter by the X-ray fluorescense analyzer." COMAR 26.02.07.02(B)(9).

## CONCLUSION

For the foregoing reasons, the Government's October 4, 2004 Motion to Dismiss is granted in part and denied in part. Plaintiff's claims against the United States are dismissed, except for Plaintiff's claim for an alleged breach of Section J of the Contract. *See* Compl. ¶ 13.

The Government's October 4, 2004 Motion for Summary Judgment is denied and Plaintiff's August 23, 2004 Cross–Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**